David S. Casey, Jr. (SBN 60768)
Gayle M. Blatt (SBN 122048)
Wendy M. Behan (SBN 199214)
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, California 92101
(619) 238-1811 phone
(619) 544-9232 fax

Deval R. Zaveri (SBN 213501)
James A. Tabb (SBN 208188)
**ZAVERI TABB, APC**
402 W. Broadway, Ste. 1950
San Diego, California 92101
(619) 831-6988 phone
(619) 239-7800 fax

Attorneys for Plaintiffs and the Putative Class

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER J. MYERS and PAUL DUGAS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>YAHOO! INC., a Delaware corporation,<br><br>        Defendant. | Case No.  **'16CV2391 CAB WVG**<br><br>**Class Action Complaint For Damages And Equitable Relief**<br><br>**Jury Trial Demanded** |

Class Action Complaint — 1

Plaintiff JENNIFER J. MYERS and PAUL DUGAS, on behalf of themselves and all others similarly situated, and for this class action complaint, states on information and belief as follows:

## INTRODUCTION

1.      This action is brought to seek redress for damages sustained by Plaintiffs and other members of the class as a result of the failure of Yahoo! Inc. (hereinafter referred to as "Yahoo" or "Defendant"), to securely store and maintain the personal information of Plaintiffs and the class.

2.      On September 22, 2016, Yahoo announced that approximately 500 million Yahoo users' account information was stolen by online hackers two years ago.  This includes names, email addresses, telephone numbers, birth dates, passwords, and security questions (referred to as "Personal Information" or "PI") of Yahoo account holders.

3.      While investigating another potential data breach, Yahoo uncovered this data breach, dating back to 2014. Two years is unusually long period of time in which to identify a data breach. According to the Ponemon Institute, which tracks data breaches, the average time to identify an attack is 191 days and the average time to contain a breach is 58 days after discovery.

## PARTIES

4.      Plaintiff JENNIFER J. MYERS is an individual who resides in San Diego, California. Plaintiff was a Yahoo account holder during the time of the data breach in 2014.

5.      Plaintiff PAUL DUGAS is an individual who resides in San Diego, California.  Plaintiff was a Yahoo account holder during the time of the data breach in 2014.

6.      Defendant Yahoo! Inc. is a Delaware corporation registered with the California Secretary of State and is headquartered in Sunnyvale, California.

7.      This action is brought by Plaintiffs on behalf of a class comprising all similarly situated consumers nationwide.

8.      Defendant operates and markets its services throughout California, and the nation, which is within this judicial district.

## JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from Defendant and there are approximately 500 million class members nationwide. The aggregate amount in controversy exceeds five million dollars ($5,000,000.00), excluding interest and costs.

10.     Venue is proper in this district under 28 U.S.C. §1391 because Defendant engaged in substantial conduct relevant to Plaintiffs' claims within this District and have caused harm to class members residing within this district.

## FACTUAL ALLEGATIONS

11.     Yahoo was founded in 1994 as a directory of web sites, but developed into a source for searches, email, shopping and news. Currently, its services still attract a billion visitors a month.

12.     Plaintiffs and class members signed up for online Yahoo accounts that included providing personal information.

13.     On or about September 22, 2016, Yahoo informed its users that they were victims of a massive data breach, dating back to 2014. Yahoo said in a statement that "the account information may have included names, email addresses, telephone numbers, dates of birth, hashed passwords (the vast majority

with bcrypt) and, in some cases, encrypted or unencrypted security questions and answers."

14.     Yahoo indicated that they believe a "state-sponsored actor" was behind the data breach, meaning an individual acting on behalf of a government. The breach is believed to have occurred in late 2014. It is estimated that at least 500 million user accounts have been stolen in what may be one of the largest cybersecurity breaches ever.

15.     The type of information compromised in this data breach is highly valuable to perpetrators of identity theft. Names, email addresses, telephone numbers, dates of birth, passwords and security question answers can all be used to gain access to a variety of existing accounts and websites.

16.     In addition to compromising existing accounts, the class members' PI can be used by identity thieves to open new financial accounts, incur charges in the name of class members, take out loans, clone credit and debit cards, and other unauthorized activities.

17.     Identity thieves can also use the PI to harm the class members through embarrassment, black mail or harassment in person or online. Additionally, they can use class members' personal information to commit other types of fraud including obtaining ID cards or driver's licenses, conducting immigration fraud, fraudulently obtaining tax returns and refunds, obtaining government benefits, evading arrest or citation by providing fraudulent information, and numerous others.

18.     The damage caused by identity theft in general registers in the billions of dollars.

19.     A Presidential Report on identity theft from 2008 states that:

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.

> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.

The President's Identity Theft Task Force, Combating Identity Theft: A Strategic Plan, at p.11 (April 2007), available at <http://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf>.

20.     These problems are further exacerbated by the fact that many identity thieves will wait years before attempting to use the personal information they have obtained. A Government Accountability Office ("GAO") study found that "stolen data may be held for up to a year or more before being used to commit identity theft." In order to protect themselves, class members will need to remain vigilant against unauthorized data use for years and decades to come. GAO, Report to Congressional Requesters, at p. 33 (June 2007), available at <www.gao.gov/new.items/d07737.pdf>

21.     Plaintiffs and class members are at risk for identity theft in its myriad forms, potentially for the remainder of their lives.

**Class Action Allegations**

22.     Plaintiffs bring this lawsuit on behalf of themselves and as a class action, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a proposed class (the "Class"), defined as:

> All persons in the United States who were or are Yahoo account holders and whose personal or financial information was accessed, compromised, or stolen from Yahoo in 2014.

23.     Plaintiffs also bring this lawsuit on behalf of themselves and as a subclass, defined as:

> All persons in the State of California who were or are Yahoo account holders and whose personal or financial information was accessed, compromised, or stolen from Yahoo in 2014.

24.     Excluded from the Class are Defendants and any entities in which Defendant or their subsidiaries or affiliates have a controlling interest, Defendant's officers, agents and employees, the judicial officer to whom this action is assigned and any member of the Court's staff and immediate families, as well as claims for personal injury, wrongful death, and emotional distress.

25.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs reasonably believe that class members number approximately 500 million persons. As such, class members are so numerous that joinder of all members is impractical. The names and addresses of class members are identifiable through documents maintained by Yahoo.

26.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law

or fact, which predominate over any questions affecting individual class members, including:

     a.   Whether Defendant engaged in the wrongful conduct alleged herein;

     b.   Whether Defendant owed a legal duty to Plaintiffs and the other class members to exercise due care in collecting, storing, and safeguarding their Personal Information;

     c.   Whether Defendant negligently or recklessly breached legal duties owed to Plaintiffs and the other class members to exercise due care in collecting, storing, and safeguarding their Personal Information and financial information;

     d.   Whether Defendant's conduct violated Cal. Civ. Code § 1750 *et seq.*

     e.   Whether Defendant's conduct violated Cal. Bus. & Prof. Code § 17200 *et seq.*;

     f.   Whether Defendant's conduct violated Cal. Civ. Code § 1798.80 *et seq.*;

     g.   Whether Plaintiffs and the other class members are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

     h.   Whether Plaintiffs and the other class members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution.

27.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by

comparison, in both quantity and quality, to the numerous questions that dominate this action.

28.    **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiffs' claims are typical of the claims of the other class members because, among other things, Plaintiffs and the other class members were injured though the substantially uniform misconduct described above. Plaintiffs herein are advancing the same claims and legal theories on behalf of themselves and all other class members, and there are no defenses that are unique to Plaintiffs.

29.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**. Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the other class members they seek to represent; they have retained counsel competent and experienced in complex class action litigation and Plaintiffs will prosecute this action vigorously. The class' interests will be fairly and adequately protected by Plaintiffs and their counsel.

30.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for class members to individually seek redress for Defendant's wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device

presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

31.   **Application of California law** – Because Yahoo is headquartered in California and all of its key decisions and operations emanate from California, California law can and should apply to all claims relating to the data breach, even those made by persons who reside outside of California.

## CLAIMS ASSERTED

## COUNT I

### Violation of California's Unfair Competition Law ("UCL")
### (Cal. Bus. & Prof. Code § 17200 et seq.)

32.   Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in each and every paragraph above, as though fully stated herein.

33.   Defendant engaged in unfair, unlawful, and fraudulent business practices in violation of the UCL.

34.   By reason of the conduct alleged herein, Yahoo engaged in unlawful, unfair, and deceptive practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

35.   Defendant stored Plaintiffs' and the other class members' PI in their electronic and consumer information databases. Yahoo represented to Plaintiffs and the other class members that its PI databases were secure and that customers' PI would remain private. Yahoo engaged in deceptive acts and business practices by providing in its website that "protecting our systems and our users' information is paramount to ensuring Yahoo users enjoy a secure user experience and maintaining our users' trust."
<https://policies.yahoo.com/us/en/yahoo/privacy/topics/security/index.htm>.

36.    Yahoo knew or should have known that it did not employ reasonable measures that would have kept Plaintiffs' and the other class members' PI and financial information secure and prevented the loss or misuse of Plaintiffs' and the other class members' PI and financial information.

37.    Yahoo's deceptive acts and business practices induced Plaintiffs and the other class members to use Yahoo's online services, and to provide PI. But for these deceptive acts and business practices, Plaintiffs and the other class members would not have provided their PI to Defendant.

38.    Yahoo's representations that it would secure and protect Plaintiffs' and the other class members' PI and financial information in its possession were facts that reasonable persons could be expected to rely upon when deciding whether to utilize Yahoo's services.

39.    Defendant violated the UCL by misrepresenting the safety of their many systems and services, specifically the security thereof, and their ability to safely store Plaintiffs' and Class Members' PI. Yahoo also violated the UCL by failing to immediately notify Plaintiffs and the other Class members of the data breach. If Plaintiffs and the other Class members had been notified in an appropriate fashion, they could have taken precautions to safeguard their PI.

40.    Defendant's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Cal. Bus. & Prof. Code §17500 *et seq.*, Cal. Civ. Code §1750 *et seq.*, Cal. Civ. Code § 1798.80 *et seq.*, and its own Privacy Policy.

41.    But for these deceptive acts and business practices, Plaintiffs and class members would not have purchased services from Yahoo or provided the required PI.

42.    Plaintiffs and the other Class members suffered injury in fact and lost money or property as the result of Defendant's failure to secure Plaintiffs' and the

other Class member's PI contained in Defendant's servers or databases. As the result of the data breach, Plaintiff and other class members' personal information and financial information was compromised.

43.    Confidence in Defendant taking reasonable measures to protect Plaintiffs' and class members PI was a substantial factor in Plaintiffs' choosing to utilize Yahoo's online services.

44.    As a result of Defendant's violation, Plaintiffs and the other class members are entitled to restitution and injunctive relief.

## Count II

**Violation of California's Consumer Legal Remedies Act ("CLRA")**

**(Cal. Civ. Code § 1750 *et seq.*)**

45.    Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in each and every paragraph above, as though fully stated herein.

46.    The CLRA was enacted to protect consumers against unfair and deceptive business practices. It extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers. Yahoo's acts, omissions, representations and practices as described herein fall within the CLRA.

47.    Plaintiffs and the other class members are consumers within the meaning of Cal. Civ. Code §1761(d).

48.    Defendant's acts, omissions, misrepresentations, and practices were and are likely to deceive consumers. By misrepresenting the safety and security of their electronic, health, and customer information databases, Defendant violated the CLRA. Defendant had exclusive knowledge of undisclosed material facts, namely, that their consumer databases were defective and/or unsecure, and withheld that knowledge from Plaintiffs and the other class members.

49.     Defendant's acts, omissions, misrepresentations, and practices alleged herein violated the following provisions of the CLRA, which provides, in relevant part, that:

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . .

(7)  Representing that goods or services are of a particular standard, quality, or grade . . . if they are of another.

(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

50.     Defendant stored Plaintiffs' and the other class members' PI in its electronic and consumer information databases. Defendant represented to Plaintiffs and the other class members that their PI databases were secure and that customers' PI would remain private. Yahoo engaged in deceptive acts and business practices by providing in its website that "protecting our systems and our users' information is paramount to ensuring Yahoo users enjoy a secure user experience and maintaining our users' trust."
<https://policies.yahoo.com/us/en/yahoo/privacy/topics/security/index.htm>.

51.     Defendant knew or should have known that they did not employ reasonable measures to keep Plaintiffs' and the other class members' Personal Information or financial information secure and prevented the loss or misuse of that information.

52.    Defendant's deceptive acts and business practices induced Plaintiffs and the other class members to use Yahoo's online services, and to provide their PI and financial information. But for these deceptive acts and business practices, Plaintiffs and the other class members would not have provided that information to Defendant.

53.    Yahoo's representations that it would secure and protect Plaintiffs' and the other class members' PI and financial information in its possession were facts that reasonable persons could be expected to rely upon when deciding whether to use Yahoo's online services.

54.    Plaintiffs and the other class members were harmed as the result of Defendant's violations of the CLRA, because their PI and financial information were compromised, placing them at a greater risk of identity theft and their PI and financial information disclosed to third parties without their consent.

55.    Plaintiffs and the other class members suffered injury in fact and lost money or property as the result of Defendant's failure to secure Plaintiffs' and the other class members' PI and financial information.

56.    As the result of Defendant's violation of the CLRA, Plaintiffs and the other class members are entitled to compensatory and exemplary damages, an order enjoining Defendant from continuing the unlawful practices described herein, a declaration that Defendant's conduct violated the CLRA, restitution as appropriate, attorneys' fees, and the costs of litigation.

57.    Pursuant to Civil Code § 1782, concurrently with the filing of this Complaint, Plaintiffs will notify Defendant in writing by certified mail of the alleged violations of section 1770 and demand that the same be corrected.  If Defendant fails to rectify or agree to rectify the problems associated with the action detailed above within 30 days of the date of written notice pursuant to Civil Code §

1782, Plaintiffs will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate in accordance with Civil Code § 1782(a) & (d).

### Count III

### Invasion of Privacy – Intrusion, Public Disclosure of Private Facts, Misappropriation of Likeness and Identity, and California Constitutional Right to Privacy

58.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in each and every paragraph above, as though fully stated herein.

59.     Plaintiffs and the class members have a reasonable expectation of privacy in their PI and financial information that Defendant failed to secure.

60.     In failing to secure Plaintiffs' and class members' PI and financial information, or by misusing, disclosing, or allowing to be disclosed this information to unauthorized parties, Defendant invaded Plaintiffs' and class members' privacy.

61.     Defendant violated Plaintiffs' and class members' privacy by:

    a.  Intruding into their private matters in a manner highly offensive to a reasonable person;

    b.  Publicizing private facts about Plaintiffs and class members that are highly offensive to a reasonable person;

    c.  Using and appropriating Plaintiffs' and class members' identities without consent;

    d.  Violating Plaintiffs' and class members right to privacy under the California Constitution, Article 1, Section 1, through the improper use of Plaintiffs' and class member's PI financial information, properly obtained for a specific purpose, for another purpose or disclosure to an unauthorized third party.

62.     Defendant either knew or acted with reckless disregard for the fact that a reasonable person would consider the Defendant's privacy invasions highly offensive.

63.     By failing to protect, misusing, or disclosing Plaintiffs' and class members' PI and financial information, Defendant acted with malice by knowingly disregarding Plaintiffs' and class members' rights to have their PI and financial information kept private. Plaintiffs seek an award of punitive damages on behalf of the class.

## <u>COUNT IV</u>

**Violation of Cal. Civ. Code § 1798.80 *et seq*.**

64.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in each and every paragraph above, as though fully stated herein.

65.     Section 1798.82 of the California Civil Code provides, in pertinent part:

(a) Any person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system.

(b) Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person.

(c) The notification required by this section may be delayed if a law enforcement agency determines that the notification will impede a criminal investigation. The notification required by this section shall

be made after the law enforcement agency determines that it will not compromise the investigation.

(d) Any person or business that is required to issue a security breach notification pursuant to this section shall meet all of the following requirements:

(1) The security breach notification shall be written in plain language.

(2) The security breach notification shall include, at a minimum, the following information:

(A) The name and contact information of the reporting person or business subject to this section.

(B) A list of the types of personal information that were or are reasonably believed to have been the subject of a breach.

(C) If the information is possible to determine at the time the notice is provided, then any of the following: (i) the date of the breach, (ii) the estimated date of the breach, or (iii) the date range within which the breach occurred. The notification shall also include the date of the notice.

(D) Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided.

(E) A general description of the breach incident, if that information is possible to determine at the time the notice is provided.

(F) The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number.

\* \* \* \* \* \* \*

(f) Any person or business that is required to issue a security breach notification pursuant to this section to more than 500 California residents as a result of a single breach of the security system shall electronically submit a single sample copy of that security breach notification, excluding any personally identifiable information, to the Attorney General.  A single sample copy of a security breach notification shall not be deemed to be within subdivision (f) of Section 6254 of the Government Code.

(g) For purposes of this section, "breach of the security of the system" means unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by the person or business. Good faith

acquisition of personal information by an employee or agent of the person or business for the purposes of the person or business is not a breach of the security of the system, provided that the personal information is not used or subject to further unauthorized disclosure.

66.    The breach described previously in this Complaint constituted a "breach of the security system" of Yahoo.

67.    Defendant unreasonably delayed informing anyone about the breach of security of Plaintiffs' and other class members' confidential and non-public PI and financial information after Defendant knew the breach had occurred.

68.    Defendant failed to disclose to Plaintiffs and other class members, without unreasonable delay, and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, PI and financial information when they knew or reasonably believed such information had been compromised.

69.    Upon information and belief, no law enforcement agency instructed Yahoo that notification to Plaintiffs or other class members would impede investigation.

70.    Pursuant to Section 1798.84 of the California Civil Code:

(a) Any waiver of a provision of this title is contrary to public policy and is void and unenforceable.

(b) Any customer injured by a violation of this title may institute a civil action to recover damages.

(c) In addition, for a willful, intentional, or reckless violation of Section 1798.83, a customer may recover a civil penalty not to exceed three thousand dollars ($3,000) per violation; otherwise, the customer may recover a civil penalty of up to five hundred dollars ($500) per violation for a violation of Section 1798.83.

* * * * * * *

(e) Any business that violates, proposes to violate, or has violated this title may be enjoined.

71.     As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiffs and the other class members incurred economic damages relating to expenses for credit monitoring, loss of use and value of their debit and/or credit cards, and loss of rewards on their debit and/or credit cards.

72.     Plaintiffs, on behalf of themselves and the class, seeks all remedies available under Cal. Civ. Code § 1798.84, including, but not limited to: (a) damages suffered by Plaintiffs and the other class members as alleged above; (b) statutory damages for Defendant's willful, intentional, and/or reckless violation of Cal. Civ. Code § 1798.83; and (c) equitable relief.

73.     Plaintiffs and the class also seeks reasonable attorneys' fees and costs under Cal. Civ. Code §1798.84(g).

## COUNT V
### Negligence

74.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in each and every paragraph above, as though fully stated herein.

75.     Defendant owed a duty to Plaintiffs and the other class members to exercise reasonable care in safeguarding and protecting their PI and financial information in its possession from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties. This duty included, among other things, designing, maintaining, and testing Defendant's security systems to ensure that Plaintiffs' and the other class members' PI and financial information was adequately secured and protected. Defendant further had a duty to implement processes that would detect a breach of their security system in a timely manner.

76.     Defendant also had a duty to timely disclose to Plaintiffs and the other class members that their PI and financial information had been or was reasonably believed to have been compromised. Timely disclosure was appropriate so that,

among other things, Plaintiffs and the other class members could take appropriate measures to cancel or change usernames, pin numbers, and passwords on compromised accounts, to begin monitoring their accounts for unauthorized access, to contact the credit bureaus to request freezes or place alerts, and take any and all other appropriate precautions.

77.    Defendant breached is duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other class members' PI and financial information by failing to adopt, implement, and maintain adequate security measures to safeguard that information; allowing unauthorized access to Plaintiffs' and the other class members' PI and financial information stored by Defendant; and failing to recognize in a timely manner the breach.

78.    Defendant breached its duty to timely disclose that Plaintiffs' and the other class members' PI and financial information had been, or was reasonably believed to have been, stolen or compromised.

79.    Defendant's failure to comply with industry regulations and the delay between the date of intrusion and the date Yahoo informed customers of the data breach further evidence Defendant's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other class members' PI and financial information.

80.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and the other class members, their PI and financial information would not have been compromised, stolen, and viewed by unauthorized persons.

81.    The injury and harm suffered by Plaintiffs and the other class members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other class members' PI and financial information. Defendant knew or should have known

that their systems and technologies for processing and securing Plaintiffs' and the other Class members' PI and financial information had security vulnerabilities.

82.    As a result of Defendant's negligence, Plaintiffs and the other class members incurred economic damages relating to expenses for credit monitoring, loss of use and value of their debit and/or credit cards, and loss of rewards on their debit and/or credit cards.

<u>COUNT VI</u>

**VIOLATION OF THE FEDERAL STORED COMMUNICATIONS ACT, 18 U.S.C. § 2702**

83.    Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in each and every paragraph above, as though fully stated herein.

84.    The Federal Stored Communications Act ("SCA") contains provisions that provide consumers with redress if a company mishandles their electronically stored information. The SCA was designed, in relevant part, "to protect individuals' privacy interests in personal and proprietary information." S. Rep. No. 99-541, at 3 (1986), reprinted in 1986 U.S.C.C.A.N. 3555 at 3557.

85.    Section 2702(a)(1) of the SCA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

86.    The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." Id. at § 2510(15).

87.    Through their equipment, Defendant provide an "electronic communication service to the public" within the meaning of the SCA because they provide consumers at large with mechanisms that enable them to send or receive

wire or electronic communications concerning their private financial information to transaction managers, card companies, or banks.

88.    By failing to take commercially reasonable steps to safeguard sensitive private financial information, even after Defendant was aware that customers' PI and financial information had been compromised, Defendant knowingly divulged customers' private financial information that was communicated to financial institutions solely for customers' payment verification purposes, while in electronic storage in Defendant's payment system.

89.    Section 2702(a)(2)(A) of the SCA provides that "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service." 18 U.S.C. § 2702(a)(2)(A).

90.    The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communication system." 18 U.S.C. § 2711(2).

91.    An "electronic communications systems" is defined by the SCA as "any wire, radio, electromagnetic, photo-optical or photo-electronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. § 2510(4).

92.    Defendant provides remote computing services to the public by virtue of its computer processing services for consumer credit and debit card payments, which are used by customers and carried out by means of an electronic communications system, namely the use of wire, electromagnetic, photo-optical or

photo-electric facilities for the transmission of wire or electronic communications received from, and on behalf of, the customer concerning customer private financial information.

93.    By failing to take commercially reasonable steps to safeguard sensitive private financial information, Defendant has knowingly divulged customers' private financial information that was carried and maintained on Defendant's remote computing service solely for the customer's payment verification purposes. As a result of Defendant's conduct described herein and their violations of Section 2702(a)(1) and (2)(A), Plaintiffs and the class members have suffered injuries, including lost money and the costs associated with the need for vigilant credit monitoring to protect against additional identity theft. Plaintiffs, on their own behalf and on behalf of the putative class, seeks an order awarding herself and the class the maximum statutory damages available under 18 U.S.C. § 2707 in addition to the cost for 3 years of credit monitoring services.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully requests that this Court enter an Order:

A.    Certifying the Class and the Subclass under Federal Rule of Civil Procedure 23(a) and 23(b)(3), appointing Plaintiffs as Class Representatives, and appointing their undersigned counsel as Class Counsel;

B.    Finding that Defendant's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

C.    Enjoining Defendant from engaging in the negligent, deceptive, unfair, and unlawful business practices alleged herein;

D.    Awarding Plaintiffs and the other class members actual, compensatory, and consequential damages;

E.     Awarding Plaintiffs and the other class members statutory damages;

F.     Awarding Plaintiffs and the other class members restitution and disgorgement;

G.     Requiring Defendant to provide appropriate credit monitoring services to Plaintiffs and the other class members;

H.     Awarding Plaintiffs and the other class members pre-judgment and post-judgment interest;

I.     Awarding Plaintiffs and the other class members reasonable attorneys' fees and costs, including expert witness fees; and

J.     Granting such other relief as the Court deems just and proper.


## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Consolidated Class Action Complaint so triable.

CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD, LLP
ZAVERI TABB, APC


s/ Wendy M. Behan
*wbehan@cglaw.com*
Attorneys for Plaintiffs